IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI FLOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 5729 |
| ) | |
| WASHINGTON SQUARE RESTAURANT, INC., ) | |
| BILL LIAPIS, MARILYN HACKETT, and ) | |
| JOSE MONTOYA, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Lori Flood, a former waitress and hostess at Washington Square Restaurant, Inc. ("the Restaurant") filed this suit against the Restaurant, Bill Liapis (the owner and manager of the Restaurant), Marilyn Hackett (a supervisor at the Restaurant), and Jose Montoya (a cook at the Restaurant). Flood's five-count complaint alleges that each of the defendants are liable for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Count I); that the Restaurant, Liapis, and Hackett are liable for retaliation under Title VII (Count II); that Montoya is liable for battery (Count III); that each of the defendants is liable for intentional infliction of emotional distress (Count IV); and that Montoya and the Restaurant are liable under the Illinois Gender Violence Act, 740 ILCS 82 (Count V). (Dkt. No. 2 ("Compl.").) Pending before the court is the motion of the Restaurant, Liapis, and Hackett to dismiss Counts I, II, IV, and V of the Complaint as to each of them. (Dkt. No. 15.) Considering each of the defendants separately, for the reasons explained below, that motion is granted in part, denied in part, and taken under advisement in part.

BACKGROUND

The following facts, which the court must accept as true for purposes of a motion to dismiss, are drawn from plaintiff Lori Flood's complaint. In March of 2011, Flood worked as a waitress and hostess at the Restaurant, where defendant Jose Montoya worked as a cook. (Compl. ¶ 10.) Sometime in March 2011 while Montoya and Flood were both working a morning shift, Montoya slapped Flood on the buttocks as she was walking by him. (*Id.* ¶ 11.) Flood complained about Montoya's action to Bill Liapis, the Restaurant's owner and manager, but Liapis did nothing other than give Montoya a verbal warning. (*Id.* ¶ 12.) Subsequently, during the morning shift on April 13, 2011, Montoya approached Flood, grabbed her breasts, forcefully twisted them, and pushed Flood up against a wall, causing her to cry out in pain. (*Id.* ¶ 14.)

Flood immediately informed her supervisor Marilyn Hackett of the incident, and Hackett informed Liapis. (*Id.* ¶¶ 15-16.) Liapis then met with Flood and Montoya in Liapis's office, where Montoya confessed to grabbing and twisting Flood's breasts. (*Id.* ¶¶ 17-18.) Flood explained to both Hackett and Liapis that she did not want to work with Montoya because she was afraid of him.

The next morning, April 14, Flood filed a formal criminal complaint against Montoya, who was arrested at the Restaurant and charged with battery. (*Id.* ¶¶ 20-21.) An "agent" of the Restaurant posted bond for Montoya to get him out of jail. (*Id.* ¶ 22.) Eventually, Montoya pleaded guilty to the battery charge. (*Id.* ¶ 30.)

Despite Montoya's actions and the criminal charge against him, the Restaurant never disciplined Montoya or even arranged for him to work different shifts than Flood, despite Flood's requests not to work with Montoya. (*Id.* ¶¶ 23, 25.) Instead, Hackett told Flood that the Restaurant would not change Flood's work schedule, and that if Flood did not return to work she would be

fired. (*Id.* ¶ 26.) Hackett also told Flood that the Restaurant would not fire Montoya, because "good cooks were hard to find." (*Id.* ¶ 27.)

In the weeks following the battery, Flood received numerous phone calls from Hackett calling on behalf of Liapis. (*Id.* ¶ 24.) Hackett urged Flood to drop the criminal charges against Montoya because she should "think about Montoya and his three children." (*Id.*) Hackett then threatened Flood with retaliation, telling her that she would "have no case with Workers Compensation" and would not be able to support herself if she did not return to work. (*Id.*)

Flood was unable to return to work because of the fear and anxiety that she suffered at the prospect of working with Montoya. (*Id.* ¶ 28.) Consequently, Hackett and Liapis terminated her employment at the Restaurant. (*Id.* ¶ 29.) Flood also alleges that the defendants' actions caused her "great embarrassment, humiliation and stress," that she has lost sleep and appetite because of the stress, and that she has sought medical and psychiatric care because of those conditions. (*Id.* ¶ 31.)

Flood filed a charge of employment discrimination with the Illinois Department of Human Rights ("IDHR") on August 30, 2011. (Dkt. No. 15, Ex. A.)[1] The IDHR cross-filed her complaint with the EEOC on April 5, 2012 (Dkt. No. 15, Ex. B), and Flood received an EEOC right to sue letter on April 30, 2012 (Dkt. No. 15, Ex. E). Flood filed her complaint on July 20, 2012.

## LEGAL STANDARD

---

[1] Although Flood did not attach her IDHR charge of discrimination to her complaint, the court may consider it as part of the pleadings because it was attached to the motion to dismiss (Dkt. No. 15, Ex. A), was referred to in the complaint (Compl. ¶ 4), and is central to Flood's claim. *See Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). For the same reasons, the court will consider Flood's charge of discrimination filed with the EEOC (Dkt. No. 15, Ex. B) and the notice of right to sue she received from the EEOC (Dkt. No. 15, Ex. E).

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

I.   Timeliness of Flood's Charge of Discrimination Against the Restaurant, Liapis, and Hackett

The Restaurant, Liapis, and Hackett first contend that Counts I and II of Flood's complaint alleging Title VII claims must be dismissed because Flood did not first file a charge of discrimination against them with the EEOC within three hundred days of the alleged unlawful employment practice, as required by 42 U.S.C. § 2000e-5(e)(1). *See Moore v. Vital Products, Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). As Flood admits, Flood has not filed any EEOC charge against Liapis and Hackett (Dkt. No. 18, at 3-4), so the Title VII claims against them are dismissed with

prejudice.[2]

Flood's charge against the Restaurant was not filed with the EEOC until April 5, 2012. Counting from the most recent incident of sexual harassment on April 13, 2011, the deadline for Flood to file her charge with the EEOC was February 7, 2012. (Compl. ¶¶ 10, 13.) Accordingly, Flood's filing came almost two months after the deadline.

Flood asserts that her filing was nonetheless timely under the continuing violation doctrine, which "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999) (citation and quotation marks omitted). According to Flood, the Restaurant committed a new discriminatory act each day that it failed to discipline Montoya. Under the continuing violation doctrine, she seeks to link the Restaurant's ongoing failure to discipline, which extends into the limitations period, to the discriminatory acts that occurred outside the limitations period.

If Flood were correct in her interpretation of the continuing violation doctrine, the Restaurant's discriminatory acts would continue indefinitely each day the Restaurant failed to discipline Montoya, making the limitations period meaningless. Moreover, it is well established that

> [a]cts that fall outside the statute of limitations may be joined to an act within the statute only if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that she had a claim; rather, she could *only tell by hindsight* that the untimely acts represented the early stages of harassment.

*Id.* at 569-70. Flood alleges that she informed the Restaurant of Montoya's harassment

---

[2] In addition, supervisors, in their individual capacity, are not "employers" under Title VII and are not susceptible to suit under Title VII, providing another reason to dismiss the Title VII claims against Liapis and Hackett. *See Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995); *Jacobeit v. Rich Tp. High Sch. Dist.*, 673 F. Supp. 2d 653, 659 (N.D. Ill. 2009) (Holderman, C.J.).

"immediately" after the April 13, 2012, incident, and that Montoya confessed to the allegations at that time (Compl. ¶¶ 15, 18.) The Restaurant's unwillingness to discipline Montoya would have been obvious to her, at the latest, within a few days thereafter, indicating to a reasonable person in Flood's position that Flood had a discrimination claim at that time. The limitations clock thus began to run, at the latest, only a few days after April 13, 2011, so Flood's filing on April 5, 2012, is untimely.

Flood next contends that she is entitled to equitable tolling because she expected the IDHR to cross-file her charge with the EEOC within the three-hundred day limitations period. Flood filed her charge with the IDHR on August 30, 2011 (Dkt. No. 15, Ex. A), and asserts that she expected the IDHR to cross-file the charge with the EEOC at that time. Accordingly, she contends that she has been diligent in attempting to file a charge with the EEOC in a timely fashion, and that she is therefore entitled to equitable tolling.

Title VII's time limits are not jurisdictional, and are susceptible to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). Flood's argument will therefore prevail if she can show that "despite all due diligence" she could not obtain the information necessary to file her claim. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005).

Neither Flood's briefing nor the allegations in her complaint explain the basis of her expectation that the IDHR would timely cross-file her complaint with the EEOC. The court thus has no basis for determining whether Flood's decision to rely on the IDHR was consistent with the exercise of due diligence in her attempts to file the charge. The court notes sua sponte that the IDHR and the EEOC have entered into a worksharing agreement which "establishes procedures for referral of charges filed with one agency that also meet the jurisdictional requisites of the other agency." *See*

*Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552, 556 (7th Cir. 1991). But Flood has not alleged anything about the terms of the worksharing agreement in effect in 2011 or about its applicability to Flood's charge, so the court declines to consider it. *Cf. Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1264 (11th Cir. 2001) (refusing to consider an EEOC worksharing agreement with a state human rights agency because "neither party to this appeal made the crucial EEOC-FCHR worksharing agreement a part of the record"). The court also notes sua sponte that Illinois law provides that:

> When the complainant [to the IDHR] requests that the [IDHR] file a complaint with the [EEOC] on his or her behalf, the [IDHR] shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party. The [IDHR] shall file the complaint with the [EEOC].

775 ILCS 5/7A-102(F)(1). That provision does not help Flood, however, because she did not allege that she requested that the IDHR file a complaint with the EEOC. Accordingly, she has not alleged facts showing that she had a reasonable expectation that the IDHR would cross-file her charge with the EEOC, or that the IDHR's failure to do so entitles her to equitable tolling.

As it turned out, the IDHR did cross-file Flood's charge with the EEOC, but it did not do so until April 5, 2012, almost two months after the limitations period expired. Again, Flood's complaint does not explain the delay. Accordingly, the court will dismiss Counts I and II of the complaint without prejudice because of Flood's failure to allege facts showing that she filed a timely charge with the EEOC. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). If facts exist which Flood believes entitle her to equitable tolling, she may assert them in an amended complaint. *See Kyles v. Staff Mgmt., Inc.*, No. 01 C 8697, 2002 WL 31133176 (N.D. Ill. July 30, 2002) (Gottschall, J.) (dismissing complaint

without prejudice to allow plaintiff to amend complaint to allege facts showing equitable tolling).

II.     Corporate Liability Under the Illinois Gender Violence Act

The motion to dismiss next contends that Flood's claim under the Illinois Gender Violence Act ("IGVA") against the Restaurant (Count V) must be dismissed because the Restaurant cannot be held responsible under a theory of *respondeat superior* for Montoya's acts against Flood. (Dkt. No. 15, at 10-13.) In response, Flood does not contest that *respondeat superior* is inapplicable, but instead contends that the Restaurant is directly liable for its own actions under the IGVA. Flood's theory is legally plausible because the IGVA provides a cause of action against any "person" who "personally encourag[es] or assist[s] any act or acts of gender-related violence."[3] 740 ILCS 82/10. Flood alleges that the Restaurant helped shield Montoya from the consequences of his actions by threatening Flood unless she dropped her criminal charges against him. That conduct is more than ample to show that the Restaurant "assisted" Montoya's actions.[4]

In its reply, the Restaurant contends for the first time that the IGVA does not apply to corporations because its reference to a "person" applies only to natural persons. To support its argument, the Restaurant relies on a decision by Judge Kennelly that was issued after Flood's response was due but before the Restaurant filed its reply. *Fayfar v. CF Management-IL, LLC*, No. 12 C 3013, 2012 U.S. Dist. LEXIS 157940 (N.D. Ill. Nov. 4, 2012). Flood has not had an

---

[3] The IGVA defines an act of gender-related violence as "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction." 740 ILCS 82/5(1). Montoya's harassment of Flood, as alleged, is thus an act of gender-related violence under the IGVA.

[4] The Restaurant contends that it did not "assist" or "encourage" Montoya because its assistance occurred after Montoya's alleged battery had taken place. There is no requirement in the IGVA, however, that the assistance must occur prior to the act of gender-related violence.

opportunity to respond to the Restaurant's argument.

Moreover, neither the opinion in *Fayfar* nor the Restaurant's reply addressed the Illinois Statute on Statutes, which provides that "'Person' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." 5 ILCS 70/1.05. Accordingly, the court orders that each side submit a supplemental brief of no more than five pages by 12/13/12 on the question of whether the IGVA applies to corporations, and that each side address the impact of the Illinois Statute on Statutes on the question.

III. Preemption by the Illinois Workers' Compensation Act

The Restaurant, Hackett, and Liapis (in this section the court will refer to them collectively as "the Restaurant") next contend that Counts I, II, IV, and V should be dismissed because they are preempted by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305, which provides exclusive compensation to workers for all accidental injuries they suffer in the course of their employment.[5] *See McPherson v. City of Waukegan*, 379 F.3d 430, 442 (7th Cir. 2004). An employee

---

[5] To the extent that the Restaurant argues for dismissal because Flood actually sought and obtained compensation for her injury under the IWCA, the court declines to consider that argument at this time. The basis for the Restaurant's argument is Flood's application for benefits under the IWCA, which the Restaurant attached to its motion to dismiss. The Restaurant contends that the court should take judicial notice of the application because it is a matter of public record and consider it at the motion to dismiss stage. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."). Just because the application was filed with a public agency, however, does not make it a matter of public record that the court may judicially notice. To the court's knowledge, Flood's application for workers' compensation is not available from a public source. Instead the Restaurant presumably received a copy as the respondent to the application, and then transmitted the application to the court. The Restaurant is not a "source[] whose accuracy cannot be questioned," *id.* at 774, however, so the court cannot judicially notice the application. Moreover, the court declines to convert the Restaurant's motion into a summary judgment motion, because the Restaurant's filings do not comply with Local Rule 56.1.

may not seek any statutory or common law remedy against an employer or co-employees for injuries covered by the IWCA other than the remedies provided in the IWCA itself. 820 ILCS 305/5(a). Obviously, a state statute cannot preempt federal law, so the Restaurant's argument has no applicability to Flood's Title VII claims (Counts I & II). *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *Johnson v. Indopco, Inc.*, 846 F. Supp. 670, 676 (N.D. Ill. 1994).

In addition, Illinois law establishes that "the exclusive remedy provisions of the [IWCA] do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts." *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1230 (Ill. 1990). Accordingly, Flood's claims of intentional infliction of emotional distress against Hackett and Liapis (Count IV) are not preempted. *See Del Gadillo v. Town of Cicero*, No. 11 C 7342, 2012 WL 3961234, at *6 (N.D. Ill. Sept. 10, 2012).

Similarly, an intentional infliction of emotional distress claim against an employer will survive preemption if the plaintiff can show that the employer "'committed, commanded, or expressly authorized' [a co-employee's] torts against her," thus establishing that her injuries were not accidental with respect to the employer.[6] *McPherson*, 379 F.3d at 443 (quoting *Juarez v. Ameritech Mobile Commc'n, Inc.*, 957 F.2d 317, 323 n.4 (7th Cir. 1992)). Flood's intentional

---

[6] A plaintiff can also avoid IWCA preemption if she can show that the injury did not arise from her employment; that the injury was not received during the course of employment, or that the injury was not compensable under the IWCA. *Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1016 (7th Cir. 2005). Flood does not contend that those exceptions are relevant here.

infliction of emotional distress claim against the Restaurant (Count IV) will thus survive if she has alleged facts sufficient to show that the Restaurant expressly authorized Montoya's battery and his sexual harassment against her.

Flood's allegations are sufficient to make that showing. She has alleged that Hackett and Liapis, her direct supervisor and the owner of the Restaurant, respectively, refused to discipline Montoya or assign him to a different shift because of his actions, both after the March incident and again after the April incident. Moreover, Hackett and Liapis repeatedly asked Flood to drop her criminal charges against Montoya and threatened her with retaliation if she did not comply. Courts have found that an employer's failure to discipline an employee after discovering the employee's intentionally tortious action constitutes sufficient authorization to avoid IWCA preemption. *See Quela v. Payco-Gen. Am. Credits, Inc.*, 84 F. Supp. 2d 956, 960 (N.D. Ill. 2000) ("[M]anagement's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct."); *Mobley v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726, 730 (N.D. Ill. 1993) ("Plaintiffs' allegations that defendants elected to stand idly by rather than attempt to prevent harassment of which they were aware amounts to an allegation that defendants encouraged and authorized the alleged conduct."); *Cline v. Gen. Elec. Capital Auto Lease, Inc.*, 757 F. Supp. 923, 931 (N.D. Ill. 1991) ("GECAL is therefore not immune from suit for Mr. Burd's malfeasance, since it was well aware of his behavior, yet chose to do nothing."). The Restaurant's actions went considerably further here, because it actively attempted to shield Montoya from the consequences of his actions rather than merely refusing to punish him. Flood's intentional infliction of emotional distress claim is not preempted by the IWCA.

The allegations are also sufficient to establish a claim for intentional infliction of emotional

distress, which requires the plaintiff to allege "(1) that the defendants' conduct was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendants' conduct was such that defendants knew that severe emotional distress would be substantially certain to result." *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. Ct. 1999). The conduct alleged goes far beyond mere "everyday job stresses," as the Restaurant contends. The Restaurant's active promotion of Montoya's sexual assault on Flood and its attempt to assist him in avoiding the consequences of his action are sufficiently extreme and outrageous to survive a motion to dismiss.

The preemption analysis of Flood's claim against the Restaurant under the IGVA (Count V), assuming that Flood can bring such a claim against a corporation, is similar to the analysis of the intentional infliction of emotional distress claim. Flood's allegations that the Restaurant attempted to shield Montoya from the consequences of his battery against Flood again establish that the Restaurant expressly authorized Montoya's actions. *See Cruz v. Primary Staffing, Inc.*, No. 10 C 5653, 2011 WL 1042629, at *2 (N.D. Ill. Mar. 22, 2011) (holding that an IGVA claim against an employer who failed to discipline an employee's acts of gender-related violence against a co-worker are not preempted by the IWCA). Flood's IGVA claim is not preempted by the IWCA.

IV.  Preemption by the Illinois Human Rights Act

Next, the Restaurant, Hackett, and Liapis contend that Flood's intentional infliction of emotional distress claims against them (Count IV) are preempted by the Illinois Human Rights Act ("IHRA"), which gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Sexual harassment by a coworker is a civil rights violation as defined in the IHRA. *See*

775 ILCS 5/2–102(D). Accordingly, any tort claims that are "inextricably linked" to such a claim of sexual harassment are preempted by the IHRA. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). Nonetheless, "claims of intentional infliction of emotional distress are not categorically preempted by the IHRA." *Id.* at 603. Instead,

> [t]he distinction between claims that are preempted by the IHRA and claims that are not preempted turns on the legal duty that the defendant allegedly breached; "that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it."

*Id.* at 604 (alteration and internal quotation marks omitted) (quoting *Krocka v. City of Chi.*, 203 F.3d 507, 516-17 (7th Cir. 2000)). In other words, to avoid preemption, Flood must be able to "prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA." *Id.*

Here, it is plain that Flood can make that showing. She alleges that the Restaurant, Hackett, and Liapis intentionally inflicted emotional distress on her by refusing to discipline an employee who allegedly committed a battery against her, and by threatening her unless she dropped her criminal charges against that employee. Even if Montoya's actions against Flood did not constitute sexual harassment, Flood's claim for intentional infliction of emotional distress could still stand, for he still would have committed a battery. The sexual harassment claim is incidental to her claim for intentional infliction of emotional distress, which is thus not preempted by the IHRA.

## CONCLUSION

For the reasons explained above, the motion of defendants Washington Square Restaurant, Inc., Bill Liapis, and Marilyn Hackett to dismiss (Dkt. No. 15) is granted in part, denied in part, and taken under advisement in part. Counts I and II of the complaint are dismissed with prejudice as to

Liapis and Hackett. Counts I and II are dismissed without prejudice as to the Restaurant. If plaintiff Lori Flood desires to file an amended complaint re-pleading Counts I and II against the Restaurant, she may do so on the date to be set in the court's ruling on Count V. Count IV remains pending against all defendants. The motion to dismiss Count V as to the Restaurant is taken under advisement. Each side shall submit a supplemental brief of no more than five pages by 12/13/12 on the question of whether the IGVA applies to corporations, and each side shall address the impact of the Illinois Statute on Statutes on that question. The court will rule electronically and set further dates in the ruling.

The court also notes that Counts I, III, IV, and V remain pending against Defendant Jose Montoya, although Montoya has not yet been served in this case. The 120-day time limit for service under Fed. R. Civ. P. 4(m) expired on 11/17/12. Accordingly, if Flood does not demonstrate good cause for her failure to timely serve Montoya by 12/13/12, the court will dismiss all counts against Montoya without prejudice.

Finally, after the court ordered the Clerk's Office to remove Exhibit F of Docket # 15 from the docket because it contained information that should have been redacted (Dkt. No. 21), the Clerk's Office placed Exhibits A-G under seal because they were all part of the same attachment as Exhibit F. To ensure that the public record is complete, defendants Marilyn Hackett, Bill Liapis, and Washington Square Restaurant, Inc. are ordered to refile Exhibits A-G of Docket # 15, with Exhibit F appropriately redacted, by 12/13/12.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 30, 2012