IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI FLOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 5729 |
| | ) |
| WASHINGTON SQUARE RESTAURANT, INC., | ) |
| BILL LIAPIS, MARILYN HACKETT, and | ) |
| JOSE MONTOYA, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

For the reasons explained below, the motion of defendant Washington Square Restaurant, Inc., to dismiss Count V of the complaint (Dkt. No. 15) is granted.

BACKGROUND

Plaintiff Lori Flood, a former waitress and hostess at Washington Square Restaurant, Inc. ("the Restaurant") filed this suit against the Restaurant, Bill Liapis (the owner and manager of the Restaurant), Marilyn Hackett (a supervisor at the Restaurant), and Jose Montoya (a cook at the Restaurant). Flood's five-count complaint alleges that each of the defendants are liable for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Count I); that the Restaurant, Liapis, and Hackett are liable for retaliation under Title VII (Count II); that Montoya is liable for battery (Count III); that each of the defendants is liable for intentional infliction of emotional distress (Count IV); and that Montoya and the Restaurant are liable under the Illinois Gender Violence Act, 740 ILCS 82 (Count V). (Dkt. No. 2 ("Compl.").) The Restaurant, Liapis, and Hackett moved to dismiss Counts I, II, IV, and V of the Complaint as to each of them.

(Dkt. No. 15.)

The court granted the motion with respect to Counts I and II, dismissing them with prejudice as to Liapis and Hackett, and without prejudice as to the Restaurant. The court denied the motion with respect to Count IV, which remained pending against all defendants. The court then took the motion under advisement with respect to Count V, which turned on the question of whether the Illinois Gender Violence Act ("IGVA") applied to corporations. The court ordered additional briefing on that question, and both sides have now submitted supplemental briefs. (Dkt. Nos. 28, 30.)

ANALYSIS

The IGVA provides that

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 ILCS 82/10. An act of gender-related violence is "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction." 740 ILCS 82/5(1).

Flood alleges that the Restaurant threatened Flood to coerce her to drop criminal charges against Montoya after he forcefully twisted her breasts while they were both working a shift at the Restaurant.[1] Those allegations sufficiently show that the Restaurant assisted Montoya's gender-related violence, and thus constitute a violation of the IGVA if the Restaurant, a corporation, is a

---

[1] For a full summary of the facts in the complaint, see docket entry number 25 at pages 2-3.

"person" under the IGVA.

Illinois law provides a framework for deciding that question. The Illinois Statute on Statutes provides rules of statutory construction that "shall be observed, unless such construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute." 5 ILCS 70/1. One of those rules provides that "'[p]erson' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." 5 ILCS 70/1.05. The rule is permissive and does not apply in every situation, as it states only that the term "person" "may" apply to corporate bodies. Nonetheless, the general instruction that the rules of the Statute on Statutes "shall be observed" except in certain specified circumstances creates what amounts to a presumption that the term "person" includes corporations. As one court put it, the Statute on Statutes establishes that "[w]hen the word 'person' is used in a statute, it is construed as applying to corporations and bodies politic as well unless the context, language, or legislative history indicates otherwise." *McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp. 2d 1043, 1049 (N.D. Ill. 1998).

The Restaurant attempts to make the showing that "person" does not apply to corporations first by attaching legislative history to its motion, including the transcripts of the floor debates in the Illinois General Assembly. (Dkt. No. 28, Exs. W, X, Y.) After summarizing the debates, the Restaurant argues that "person" cannot apply to corporations because "[t]he legislative debates do not indicate any intention of applying the IGVA to corporations." (Dkt. No. 28, at 4.) That argument gets the presumption precisely backward, as the Statute on Statutes does not require an affirmative showing that "person" includes corporations. The court agrees that the available legislative history does not speak to the question. The debates (to the extent one can call them that, given that the bill

passed unanimously in both chambers of the General Assembly) reveal only a general intention to, as Representative Cross put it on the floor of the House, provide "civil relief to people that have been harmed as a result of their particular gender." (Dkt. No. 28, Ex. W, at 50.) The debates remain at that level of generality throughout, and fail to indicate whether the legislature contemplated a civil remedy against corporations, a remedy that would no doubt bolster the bill's purpose, but is not absolutely necessary to its advancement. The legislative history is silent, and thus does not remove the presumption that the term "person" applies to corporations.

The Restaurant next points out that the IGVA uses the term "person" in a way that cannot extend to corporations when it grants a right of action to "[a]ny person who has been subjected to gender-related violence." 740 ILCS 82/10. A corporation cannot be subjected to gender-related violence, it reasons, so the term "person" must exclude corporations in that context. The Restaurant then argues that the term "person" must have a consistent meaning throughout the statute, and concludes that "person" must exclude corporations everywhere the IGVA uses the term.

That argument fails as well, because Illinois courts applying the Statute on Statutes have not defined "person" identically in every context in a statute, but have instead given it different meanings in different contexts. For example, in *Paxson v. Board of Education of School District Number 87*, 658 N.E.2d 1309 (Ill App. Ct. 1995), the court evaluated § 3(a) of the Illinois Open Meetings Act providing that "any person . . . may bring a civil action in the circuit court for the judicial circuit in which" an alleged violation of the Act occurred. *Id.* at 1312 (quoting 5 ILCS 120/3(a) (1995)). Another section of the Open Meetings Act stated that public bodies could hold closed meetings to consider "[t]he selection of a person to fill a public office." 5 ILCS 120/2(c)(3) (1995). In that context, a "person" plainly could not be a corporation. Nonetheless, the court

concluded that the term "person" in § 3(a) included a corporation, establishing that the term "person" can have a different meaning in different parts of a statute. *See Paxson*, 658 N.E.2d at 1313; *see also Town of City of Champaign v. Overmeyer's, Inc.*, 152 N.E.2d 752, 754 (Ill. App. Ct. 1958) (holding that the Dram Shop Act's right of action against "any person" serving liquor under certain circumstances applied to a township, even though the same section of the act provided that right of action to those injured "by any intoxicated person," a usage that could not apply to corporations). Accordingly, the IGVA's use of the term "person" in contexts that plainly exclude corporations does not resolve the question of its meaning in the context at issue here.

The Restaurant's third argument, however, has more merit. The Restaurant points out that a person can be liable under the IGVA only for "personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS 82/10. The term "personally," however, has no meaning when applied to a corporation. It is true that the Statute on Statutes leaves open the possibility of applying a word like "personally" to corporations, for it states that "all words referring to or importing persons" may apply to corporations. 5 ILCS 70/1.05. In this case, however, the court cannot conceive of how a corporation could "personally" perpetrate an act of gender-related violence. Corporations act only through their agents, so it is impossible for a corporation to "personally" do anything. Accordingly, the IGVA's use of the word "personally" provides context indicating that the "person" who perpetrates gender-related violence under the IGVA cannot be a corporation. That context is sufficient to overcome the presumption under the Statute on Statutes that the term "person" includes corporations.[2]

---

[2] That reasoning is consistent with the reasoning of Judge Kennelly's unreported opinion in Dkt. No. 13, *Fayfar v. CF Mangement-IL, LLC*, No. 12 C 3013 (N.D. Ill. Nov. 4, 2012), which determined that the IGVA does not apply to corporations.

The cases that Flood cites in support of its position that the IGVA applies to corporations are not to the contrary. In *McCaleb*, the court found that a corporation could be liable under the Illinois Hate Crimes Act, which provides that "[a] person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, he commits" any one of a series of crimes. *McCaleb*, 28 F. Supp. 2d at 1048-49 (quoting 720 ILCS 5/12–7.1(a) (1995)). *McCaleb* is on all fours with this case, except that there is no modifier like "personally" in the Hate Crimes Act that cannot be applied to corporations. The presence of "personally" in the IGVA is dispositive. The same distinction applies to *Paxson*, as the Open Meetings Act also does not include any modifier precluding its application to corporations.

Finally, Flood contends, in a single brief paragraph in her supplemental briefing, that the court should allow the IGVA claim to proceed against the Restaurant because the Restaurant is liable under "ordinary *respondeat superior* liability rules" for the misconduct of Liapis and Hackett, who articulated the threats to Flood to drop her charges against Montoya. (Dkt. No. 30, at 5.) In its original motion to dismiss, the Restaurant contended that it could not be held responsible under a theory of *respondeat superior* for Montoya's acts against Flood. (Dkt. No. 15, at 10-13.) Flood's response did not contest that *respondeat superior* was inapplicable, but instead contended that the Restaurant was directly liable for its own actions under the IGVA. (Dkt. No. 18, at 12-13.) At no point prior to the single brief paragraph in the supplemental briefing did Flood raise the argument that the Restaurant is liable under *respondeat superior* principles for Liapis's or Hackett's actions. Moreover, the brief paragraph is too short to properly raise the argument. Accordingly, that argument is waived, and the court declines to address it. *See County of McHenry v. Ins. Co. of the*

*W.*, 438 F.3d 813, 818 (7th Cir. 2006) ("Although the district court is required to consider whether a plaintiff could prevail under any legal theory or set of facts, it will not invent legal arguments for litigants, and is not obliged to accept as true legal conclusions or unsupported conclusions of fact." (citation and quotation marks omitted)).

## CONCLUSION

For the reasons stated above, the Restaurant's motion to dismiss Count V with respect to it (Dkt. No. 15) is granted. Count V against the Restaurant is dismissed. Moreover, Flood has not filed by 12/13/12 any documents to show good cause for her failure to timely serve Montoya, as the court ordered. (Dkt. No. 24.) Counts I, III, IV, and V against Montoya are thus dismissed without prejudice. Count IV remains pending against the Restaurant, Hackett and Liapis. If plaintiff Lori Flood desires to file an amended complaint re-pleading Counts I and II against the Restaurant, she must do so by 1/11/13. The defendants' answer is due 1/25/13. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before 2/1/13. The case is set for status and entry of a scheduling order at 9:00 AM on 2/5/13. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 21, 2012